U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
APR 23 2026
AT ____ O'CLOCK ____
John M. Domurad, Clerk - Plattsburgh

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

**UNITED STATES OF AMERICA**
**v.**
**DJOSAHA AZULPHAR and DEONTAE ALEXANDER,**

**Defendant**

Case No. 8:26-MJ-86 (GLF)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of April 21, 2026 in the county of Clinton in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) | The defendants conspired to distribute and possess with intent to distribute 3,4-methylenedioxymethamphetamine, a Schedule I controlled substance. |

This criminal complaint is based on these facts:
Click here to enter text.

☒ Continued on the attached sheet.

GARRICK ARIAS Digitally signed by GARRICK ARIAS Date: 2026.04.22 20:49:40 -04'00'

*Complainant's signature*

Special Agent Garrick Arias, DEA

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: April 23, 2026

*Judge's signature*

City and State: Plattsburgh, NY

Hon. Gary L. Favro, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Garrick Arias, being duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent for the United States Drug Enforcement Administration (DEA). I have been a Special Agent with DEA since completion of the DEA Training Academy, in Quantico, Virginia on July 16, 2021. After completion of the Basic Agent Training Academy, I was assigned to the New York Field Division, Plattsburgh Resident Office. I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education, and experience (including monitoring wiretapped conversations of drug traffickers and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activities to avoid detection by law enforcement.

2. I have participated in the investigation and prosecution of complex narcotics enterprises, including major narcotics organizations. These investigations included the use of court-ordered eavesdropping. I have also conducted analyses of telephone billing records for telephones used by narcotics traffickers. Narcotics officers and agents who belong to the DEA's Plattsburgh Resident Office also have extensive experience in narcotics investigations, especially involving high-level narcotics traffickers and money launderers. I have had and continue to have conversations with narcotics agents and officers of the Plattsburgh Resident Office concerning this investigation and other narcotics related investigations.

3. I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials. The statements of fact contained in this affidavit are based upon my personal knowledge, participation in the investigation, information provided by agents of the DEA and other law enforcement agencies, analysis of documents, and my experience and training as a Special Agent. As a result of my participation in this investigation, I am fully familiar with the facts and circumstances of the investigation.

4. As part of my duties, I have become involved in an investigation of a violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(C), conspiracy to distribute and possess with intent to distribute a controlled substance. I have set forth only those facts that I believe are necessary to establish probable cause to believe that Djosaha AZULPHAR and Deontae ALEXANDER have committed a violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(C).

**PROBABLE CAUSE**

5. On April 21, 2026, at approximately 11:03 am, a Drug Enforcement Administration ("DEA") Confidential Source[1] received a text message from an induvial known to the CS as "T" (known to investigators as Djosaha AZULPHAR) stating, "Paperwork came through Let me know when you are ready." This text was in reference to the purchase of 50,000 3,4-methylenedioxymethamphetamine (MDMA) pills set up between the CS and AZULPHAR.

6. At approximately 11:20 am, Special Agent Arias and Special Agent Laramee met the CS at a predetermined location. The CS conducted a recorded Facetime call with AZULPHAR. Facetime is an application available on smartphones that allows users to communicate via video feed. During that controlled Facetime call, AZULPHAR showed the CS a black grocery/trash bag

[1] This DEA CS is being paid by DEA for their information/services.

with pills. AZULPHAR agreed to meet the CS at approximately 1:00 pm that day to complete the transaction.

7. At approximately 1:00 pm, members of the Plattsburgh Resident Office and New York State Police initiated surveillance in the vicinity of the Super 8 Hotel in Plattsburgh, NY in anticipation of the controlled purchase. Agents planned to arrest AZULPHAR during the transaction. Agents provided the CS with audio recording devices. The CS and his/her vehicle were also searched, and no contraband was located.

8. At approximately 1:15 pm, the CS conducted another Facetime call with AZULPHAR and told him to meet at the Super 8 Hotel. AZULPHAR wanted to see the money that would be used to purchase the MDMA pills before he made the trip to the Super 8. The CS hung up on AZULPHAR and a short time later sent him a picture of fake currency. AZULPHAR called the CS back and said that he wanted to see a video of the money to which the CS told him no.

9. At approximately 1:40 pm, the CS drove from the DEA meeting location to the Super 8 Hotel. Once at the Super 8 Hotel, the CS and AZULPHAR conducted multiple Facetime calls discussing the potential transaction for MDMA.

10. At approximately 2:16 pm, AZULPHAR told the CS that he had been picked up and was on his way.

11. At approximately 2:31 pm, New York State Police Investigator Ashley Whitty observed a black male driving a 2020 Hyundai Tucson, bearing NY license plate LSU4320 (hereafter referred to as the Target Vehicle), a vehicle registered to AZULPHAR's girlfriend. Agents maintained surveillance on the target vehicle as it travelled to the Super 8 Hotel. Once at

the Super 8 Hotel, the vehicle exited and reentered the parking lot, an action your affiant knows is consistent with countersurveillance.

12. At approximately 2:35 pm, New York State Police Investigator Daniel Albee observed a black male exit the target vehicle and approach the CS. The CS later confirmed this male is the individual he/she knows as "T," who has been identified as AZULPHAR. The CS and AZULPHAR engaged in conversation until approximately 2:39 pm. At that time, AZULPHAR entered the front passenger side of the CS vehicle and they continued their conversation.

13. At approximately 2:41 pm, Task Force Officer Christopher Holland observed a black male wearing all black with a backpack, later identified as Deontae ALEXANDER, riding an electric bicycle at the Stewarts gas station located directly across from the Super 8 Hotel. ALEXANDER was at gas station's air pump. ALEXANDER was looking at Task Force Officer Holland, who was in his police vest. He also was putting air in the tires of his electric bike. Task Force Officer Holland noticed that the tires appeared full of air, but ALEXANDER continued to fill them.

14. At approximately 2:42 pm, Task Force Officer Holland observed ALEXANDER on the electric bike leaving the Stewarts gas station. New York State Police Investigator Whitty continued surveillance on ALEXANDER as he continued towards Plattsburgh City Beach. Surveillance was lost at that point.

15. At approximately 2:44 pm, the CS and AZULPHAR left the Super 8 Hotel and traveled to the McDonalds on Margaret St., Plattsburgh. At this time, surveillance was lost but the CS later advised that at McDonalds, AZULPHAR exited the vehicle, made a quick phone call and then reentered the CS's car. A short time later, the CS vehicle was observed travelling to Lennox Way. The CS pulled into a parking spot on Lennox Way. Surveillance units were unable to follow

the CS down Lennox Way, but the CS later advised that AZULPHAR told him/her that the MDMA was in an apartment on Lennox Way and that he called the other person to show the CS the MDMA, but they did not answer. A short time later, the CS's vehicle was observed leaving Lennox Way, travelling back towards the Super 8 Hotel.

16. At approximately 2:53 pm, the CS and AZULPHAR returned to the Super 8 Hotel. Once at the hotel, AZULPHAR exited the CS vehicle and entered his vehicle. Both the CS and AZULPHAR exited the parking lot. The CS returned to a neutral location where recording devices were returned to controlling agents and the CS and his/her vehicle was searched with no contraband located.

17. The target vehicle pulled into the Dollar General Parking lot. New York State Police Investigator Whitty observed AZULPAR exit the vehicle and enter the Dollar General.

18. At approximately 2:57 pm, Task Force Officer Holland observed ALEXANDER on the electric bike at the entrance to the bike path near the City Beach in Plattsburgh. At that time, Task Force Officer Holland observed ALEXANDER on his phone with his hood up.

19. At approximately 3:03 pm, New York State Police Investigator Whitty observed AZULPHAR exit the Dollar General and enter the target vehicle.

20. At approximately 3:04 pm, Task Force Agent Erik Turner confirmed that ALEXANDER was on the electric bike, still waiting near the bike path.

21. At approximately 3:04 pm, New York State Police Investigator Whitty observed the target vehicle leave the Dollar General and travel south on route 9. Surveillance units observed the target vehicle travel to multiple locations on route 9 and turn around, actions your affiant knows are consistent with countersurveillance.

22. At approximately 3:26 pm, Task Force Agent Turner observed a male on an electric bike travelling south on route 9 near Lennox Way. At approximately 3:28 pm, Task Force Officer Holland confirmed this was ALEXANDER. ALEXANDER no longer had the backpack on.

23. At approximately 3:30 pm, Task Force Agent David Gottschall began walking on the bike path, looking for the backpack previously observed in ALEXANDER's possession. During this time, agents maintained surveillance on AZULPHAR and ALEXANDER. Surveillance was lost on both in between Robinson Terrace and Elm St.

24. At approximately 3:44 pm, Task Force Agent Gottschall located a Supreme backpack in the woods. The bag contained an undetermined number of pills. Agents seized the pills, filled the backpack with rocks and placed it back where it was located. Agents remained in the area in undercover capacities to maintain surveillance on the backpack.

25. At approximately 4:11 pm, Task Force Officer Holland located the target vehicle parked in the public parking lot near 53 Oak St., Plattsburgh.

26. At approximately 5:27 pm, Task Force Officer Erin Flaherty observed AZULPHAR, his girlfriend and their baby leave a residence on Oak St., Plattsburgh. Task Force Officer Flaherty followed the target vehicle to the vicinity of 208 Margaret St., Plattsburgh, where AZULPHAR exited the vehicle with what appeared to be a box of diapers in his hands. His girlfriend drove away.

27. At approximately 5:29 pm, Task Force Agent Turner observed ALEXANDER on the electric bike traveling back towards the bike path.

28. A short time later, Agents observed ALEXANDER on the bike path near the backpack. ALEXANDER passed the backpack and stopped at a gazebo near the backpack. He remained there for a very short time and then rode the bike in the direction of the backpack. Special

Agents Arias and Laramee observed ALEXANDER get off the electric bike, walk towards the backpack, pick it up and put it on. He slowly walked back to his electric bike at which point Special Agents Arias and Laramee identified themselves as police officers and told him to not move. ALEXANDER began to run and threw the bag into the woods. After a brief foot pursuit, ALEXANDER was taken into custody.

29. Task Force Officer Flaherty observed AZULPHAR walk in between 203/205 Margaret St. In late 2025, the DEA Plattsburgh Resident Office received two anonymous tips regarding ALEXANDER selling drugs in Plattsburgh. One of these tips about AZULPHAR included the address 205 Margaret St., Plattsburgh.

30. At approximately 5:42 pm, Task Force Officer Flaherty observed AZULPHAR coming out to Margaret Street while seemingly on his phone and looking around.

31. At approximately 6:02 pm, Task Force Officer Flaherty observed the target vehicle pulling up across the street from 203/205 Margaret. AZULPHAR walked across the road and entered the target vehicle.

32. At approximately 6:04 pm, Special Agent Arias and Task Force Agent Dupont conducted a probable cause traffic stop on the target vehicle. The target vehicle pulled into the storage units located at 302 Margaret St, Plattsburgh, NY. AZULPHAR's girlfriend was the vehicle's driver and AZULPHAR was in the front seat passenger. AZULPHAR was taken into custody without incident.

33. Special Agent Arias and Task Force Agent DuPont transported the suspected MDMA pills to the Plattsburgh RO where they were further processed. Equipment Operator Justin Gauthier conducted multiple field tests of the different pills, which all yielded positive results for methamphetamine, which your affiant knows is consistent with the pills being MDMA. The pills

collectively weighed approximately 3,303.9 grams. The CS confirmed these were the same pills shown to the CS during his/her Facetime call with AZULPHAR.

34. Based on the foregoing, I submit that there is probable cause to believe that Djosaha AZULPHAR and Deontae ALEXANDER committed a violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(C), conspiracy to distribute and possess with intent to distribute a controlled substance.

Attested to by the Affiant:

Respectfully submitted,

GARRICK ARIAS Digitally signed by GARRICK ARIAS Date: 2026.04.22 20:46:50 -04'00'

Garrick Arias
Special Agent
Drug Enforcement Administration

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on April 23, 2026 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Honorable Gary L. Favro
U.S. Magistrate Judge